# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:21-cv-420-FDW
### (3:17-cr-134-FDW-DSC-5)

| | | |
|---|---|---|
| JAMES BAXTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and First Amended Motion to Vacate,

(Doc. No. 4). Also pending is a Motion to Recuse, (Doc. No. 8), and the Government's Motion to

Dismiss Petitioner's Motion to Recuse, (Doc. No. 10).

## I. BACKGROUND[1]

Petitioner and 82 co-Defendants were charged in a 72-count Superseding Bill of Indictment

in a RICO conspiracy involving the United Blood Nation ("UBN") gang. All of the defendants

named in the Indictment are members or associates of the UBN. (Id.). Petitioner was charged in

Count One with RICO conspiracy in violation of 18 U.S.C. § 1962(d). (3:17-cr-134 ("CR") Doc.

No. 1241). The Indictment charged that the Petitioner engaged with his co-Defendants and others

to conspire to violate 18 U.S.C. § 1962(c) by conducting and participating, directly and indirectly,

in the conduct of the affairs of the UBN enterprise through a pattern of racketeering activity as

defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), including: multiple acts

---

[1] This section is not exhaustive. Additional information is included in the Discussion section as relevant to the various claims.

1

involving murder in violation of North Carolina Gen. Stat. §§ 14-17, 14-2.4, 14-2.5, and 14-5.2; and South Carolina Code of Laws §§16-3-10, 16-3-29, § 16-1-40; and robbery, in violation of North Carolina Gen. Stat. §§ 14-87, 14.87.1 14-2.4, 14-2.5, and 14-5.2; and South Carolina Code of Laws §§ 16-3-19 and 16-11-330; multiple acts indictable under 18 U.S.C. §§ 1028, 1343, 1344, and 1951; and multiple offenses involving narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1), 843, and 846. (Id.). The overt acts pertaining to Petitioner include: engaging in correspondences discussing gang business (OA-6, OA-146, OA-160); receiving gang dues (OA-7, OA-8, OA-9, OA-11, OA-12, OA-13, OA-16, OA-22, OA-24, OA-30, OA-136); conducting gang meetings and discussing gang business (OA-124, OA-132, OA-158, OA-159); and threatening an individual to dissuade them from cooperating with law enforcement (OA-328). (Id.).

The day before jury selection in the joint trial of Petitioner and co-Defendants Cynthia Gilmore and Pedro Gutierrez, co-Defendant Gilmore moved for the Court's recusal pursuant to 28 U.S.C. § 455. Gilmore argued that the Court's "impartiality might reasonably be questioned" because the Court had recused himself in a prior UBN case, United States v. Cureton, 3:14-cr-229-MOC-1, in which a photograph of the Court was found in Mr. Cureton's cell. (CR Doc. No. 1499). Gilmore argued that denying recusal in the instant case would be inconsistent with the recusal in the Cureton case, and because the Court had found that an anonymous jury was warranted in Petitioner's case due to the nature and dangerousness of UBN, as demonstrated by the Cureton case. (Id.). The Court disagreed, noting that, in Cureton this Court determined that recusal was warranted in the interests of justice to avoid questions of impartiality or accusations of personal bias, and to ensure a fair trial for the defendant, because Mr. Cureton's specific conduct resulted in a credible threat to the Court, and that threat had received significant media coverage. (CR Doc.

No. 1606). By contrast, in the instant criminal case, there was no credible threat against the Court; nothing else would have any impact on the Court's ability to adjudicate this case; and granting a recusal in this case would set the precedent of encouraging judge-shopping. (Id.).

During a lengthy jury trial, the Government presented evidence that the Petitioner is an acting Godfather of the Nine Trey Gangster set of UBN and that he was engaged in gang activity, including collecting dues that came from co-Defendants' drug proceeds, engaging in gang-related correspondences, and conducting gang-related meetings while he was incarcerated in the New York Department of Corrections. See, e.g., (CR Doc. No. 2346 at 50); (CR Doc. No. 2344 at 124-25, 160); (CR Doc. No. 2349 at 7-8). There was also evidence that Petitioner engaged in drug activities, i.e., possession of between 20 and 25 grams of heroin ("dog food") to sell in the New York Department of Corrections. See, e.g., (CR Doc. No. 2346 at 93). The jury found Petitioner guilty as charged of RICO conspiracy. (CR Doc. No. 1565).

The Presentence Investigation Report ("PSR") calculated the base offense level as 30 pursuant to U.S. Sentencing Guidelines § 2D1.1(a)(5) and (c)(5) because "[e]vidence reflects that during the course of the conspiracy and in addition to the drugs he personally trafficked while incarcerated, Baxton and other high-ranking leaders of the UBN knew that their subordinates … trafficked controlled substances including cocaine, cocaine base, heroin, and marijuana in a combined amount totaling at least 1,600 kilograms worth of marijuana…." (CR Doc. No. 1941 at ¶ 35). Two levels were added because the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility pursuant to § 2D1.1(b)(4). (Id. at ¶ 36). Four levels were added because Petitioner was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive pursuant to § 3B1.1(a). (Id. at ¶ 38). Two levels were added for obstruction of justice pursuant to § 3C1.1 because the evidence

reflects that, during the pendency of this case and while Petitioner knew this case was pending, he attempted to influence the proceedings by having witnesses falsify their testimony. (Id. at ¶ 39). This resulted in a total offense level of 38. (Id. at ¶ 55). Petitioner had 12 criminal history points and two points were added because Petitioner committed the instant offense while he was under a criminal justice sentence. (Id. at ¶¶ 65-66). This resulted in a total of 14 criminal history points and a criminal history category of VI. (Id. at ¶ 67). The advisory imprisonment range was 360 months to life, however, the statutory maximum for the offense is 240 months' imprisonment, and accordingly, the guidelines range was 240 months' imprisonment followed by between one and three years of supervised release. (Id. at ¶¶ 86, 89).

Counsel filed PSR objections arguing *inter alia* that there was no evidence to support the 1,600 kilograms of marijuana attributed to Petitioner, that the enhancement for obstruction of justice does not apply, and that the four-point enhancement for an organizer or leader role does not apply. (CR Doc. Nos. 1802, 2004).

At the sentencing hearing,[2] the Court entertained the parties' arguments and evidence regarding the PSR calculations and Petitioner's objections. The Court overruled the objections and sustained the PSR. The Court sentenced Petitioner to 240 months' imprisonment, consecutive to any previously imposed state or federal sentence, followed by three years of supervised release. (CR Doc. No. 2047); (CR Doc. No. 2119) (Amended Judgment).

On direct appeal, Petitioner and co-Defendants Gutierrez and Gilmore argued in a consolidated appeal *inter alia* that: the Court erred by deciding to empanel an anonymous jury, which deprived them of a fair trial by an impartial jury; the Court abused its discretion by deciding not to recuse himself from presiding over the criminal case; errors occurred during jury selection;

---

[2] Petitioner was sentenced at the same hearing as co-Defendant Gutierrez.

the evidence was insufficient to support the RICO conspiracy; the Court erred by not issuing a special verdict form requiring the jury to indicate specific racketeering activities that each defendant conspired to commit; there was insufficient evidence to support the jury's civil forfeiture findings; and the sentence was procedurally and substantively unreasonable. The Fourth Circuit Court of Appeals affirmed. United States v. Gutierrez, 963 F.3d 320 (4th Cir. 2020). With regards to the recusal issue, the Fourth Circuit found no abuse of discretion, stating that: "appellants do not provide any basis for us to find the risk of confusing the public or to question the district court's impartiality and mental state, except that he recused himself from an earlier trial of another UBN member unrelated to the case at bar. But as the judge properly noted, that case is distinguishable from Appellants' case because his photo was found in [Cureton's] cell, and there is no comparable evidence here." Id. at 332. The United States Supreme Court denied certiorari on February 22, 2021. Baxton v. United States, 141 S.Ct. 1431 (2021).

Petitioner filed the instant § 2255 Motion to Vacate on August 4, 2021.[3] He argues that counsel was ineffective for:

> (a) failing to object to the jury instruction stating that a 21 U.S.C. § 843(b) crime was a qualifying racketeering predicate; (b) failing to object to instructions allowing the jury to consider "attempted second-degree murder" as a predicate act; (c) failing to seek a jury instruction regarding the "interdependence" element of charged conspiracy; (d) failing to object to jury instruction misstating the elements of the charged offense, *i.e.*, (i) operation and management and participation conduct requirement, and (ii) enterprise versus pattern of racketeering activity distinction; (e) failing to conduct proper investigations and interview favorable witnesses in order to present exculpatory or mitigating evidence for sentencing purposes; (f) failing to adequately raise challenge in district court and on appeal the propriety of the obstruction of justice enhancement; and (g) failing to raise each of the aforementioned issues on direct appeal.

(Doc. No. 1-1 at 3-4); see (Doc. No. 1-1 at 37) (statement of Montraya Atkinson).

---

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), Rules Governing § 2255 Proceedings in the United States District Courts (addressing inmate filings).

5

He also filed a First Amended Motion to Vacate, in which he argues that: (h) trial counsel provided constitutionally ineffective assistance when he failed to properly argue for the Court's recusal. (Doc. No. 4 at 3). The Government filed a Response arguing that the § 2255 claims should be denied because Petitioner' has failed to show deficient performance or prejudice. (Doc. No. 5). The Petitioner filed a Reply. [Doc. 8]. The matter is now ripe for disposition.

The Petitioner has filed a Motion to Recuse, (Doc. No. 8), in which he reiterates his argument that the Court should have recused himself from the criminal case, and seeks the Court's recusal from the instant § 2255 proceeding. The Government filed a Motion to Dismiss Petitioner's Motion to Recuse, (Doc. No. 10), arguing that the Motion is untimely, barred, and meritless. Petitioner filed a Response (Doc. No. 11), arguing that the Motion should be considered timely pursuant to laches and disputing the Government's assertion that the recusal issue has been rejected by the Fourth Circuit.

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States

v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III.    DISCUSSION[4]

**(1)    Claims of Ineffective Assistance of Trial Counsel**

Petitioner contends that trial counsel was ineffective with regards to: (A) the jury instructions; (B) sentencing; and (C) seeking the undersigned's recusal.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

**(A)    Jury Instructions**

Petitioner argues that counsel was ineffective with regards to the jury instructions by failing to: (a) object to an instruction that erroneously stated that a 21 U.S.C. § 843(b) crime is a qualifying racketeering predicate; (b) object to an instruction that erroneously allowed the jury to consider North Carolina attempted second-degree murder, a non-existent offense, as a predicate act; (c)

---

[4] Petitioner's claims have been liberally construed, restated, and renumbered. Any arguments or claims not specifically addressed in this Order have been considered and rejected.

request an instruction regarding the "interdependence" element of conspiracy; (d) object to an instruction misstating the operation, management, and participation conduct requirement element of RICO conspiracy; and (e) object to an instruction that failed to explain the distinction between an enterprise and a pattern of racketeering activity.

A district court has an obligation to give instructions to the jury that "fairly state[ ] the controlling law." United States v. Cobb, 905 F.2d 784, 789 (4th Cir.1990). "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). To demonstrate prejudice in the context of a jury instruction error, the court examines whether the petitioner has demonstrated a reasonable probability of a different outcome with a proper jury instruction. United States v. Rangel, 781 F.3d 736, 743-44 (4th Cir. 2015).

**(a)** First, Petitioner complains that counsel should have objected when the Court instructed the jury that a violation of § 843(b) is a type of "racketeering activity" under RICO, because the "use of communications facilties" is not listed as a predicate offense under the RICO statute. (Doc. No. 1-1 at 5-7). Petitioner argues that the instruction was prejudicial because it allowed the jury to return a guilty verdict for RICO conspiracy based on a legally invalid theory and, as the general verdict does not specify the racketeering activity it found, the Government was essentially relieved of its burden of proof.

The RICO conspiracy statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." 18 U.S.C. § 1962(d). The elements of § 1962(c) are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity. Salinas v. United States, 522 U.S. 52, 62 (1997). There is no requirement of some overt act or specific act in the RICO statute, unlike the general conspiracy provision

applicable to federal crimes. Id. at 63. A "pattern of racketeering activity" is defined as at least two acts of "racketeering activity…." Id. at 62. "Racketeering activity" includes "**any offense** involving … the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under **any law** of the United States…." 18 U.S.C. § 1961(1)(D) (emphasis added).

The Court instructed the jury that, to find Petitioner guilty of RICO conspiracy, it must find that he agreed to violate, and knowingly and willfully agreed that he, or some other member of the conspiracy, would commit at least two acts of racketeering of the types of racketeering activity set forth in the indictment (CR Doc. No. 2349 at 167-68), and that the verdict must be unanimous as to which type or types of predicate racketeering activity Petitioner agreed would be committed (id. at 182). The Court then set forth the 12 types of racketeering activity alleged in the Indictment, including the "use of communications facilities in order to facilitate a controlled substance offense under Title 21, United States Code, Section 843(b)." (Id. at 191).

A violation of § 843(b) qualifies as an offense involved in dealing a controlled substance which is punishable under any law of the United States pursuant to § 1961(1)(D). See United States v. Tinsley, 800 F.2d 448, 450 (4th Cir. 1986) (affirming RICO convictions based in part on the predicate offense of telephone facilitation in violation of § 843(b)); see also United States v. Allen, 909 F.3d 671 (4th Cir. 2018) (finding that a § 843(b) offense is a controlled substance offense for purposes of the career offender guideline). The instruction regarding § 843(b) was not erroneous and counsel cannot be deemed ineffective for failing to object.

**(b)** Second, the Petitioner argues that counsel failed to object when the Court instructed the jury that "attempted second-degree murder" is a predicate act for purposes of RICO conspiracy,

9

whereas no such offense exists under North Carolina law.[5] (Doc. No. 1 at 4); (Doc. 1-1 at 7-8). With regards to prejudice, Petitioner argues that "it is fair to assume that the second degree murder language is what the jury retained and took to the deliberation chamber," rather than the language about "specific intent," because "second degree murder" is more familiar than "specific intent," and that "prejudice is clear." (Doc. No. 9 at 11).

The Court instructed the jury that the Indictment charges the following racketeering activity that was or was intended to be committed as part of the RICO conspiracy: "acts involving murder, chargeable under Sections 14-17, 14-2.4, 14-2.5, and 14-5.2 of the North Carolina General Statutes. Acts involving murder include all inchoate forms of that offense, including conspiracy to commit murder and attempted murder, as well as first degree and second degree substantive murder and … accessory before the fact to murder." (CR Doc. No. 2349 at 182). The Court then further instructed the jury:

> Second degree murder under North Carolina law is the killing of another person with … either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation.

> Attempted murder under North Carolina law is a substantial step, beyond mere preparation, toward the commission of murder in the second degree. In order to prove attempt, the Government must show that the assailant had the apparent ability at that time to commit the crime of murder and the intent to commit murder.

(Id. at 183).

Assuming *arguendo* that the foregoing was erroneous or confusing, the Plaintiff is not entitled to relief because he has failed to demonstrate prejudice. The jury was instructed on 12 types of racketeering activity that was, or was intended to be, committed as part of the RICO

---

[5] See State v. Coble, 351 N.C. 448, 451, 527 S.E.2d 45, 48 (2000) ("Because specific intent to kill is not an element of second-degree murder, the crime of attempted second-degree murder is a logical impossibility under North Carolina law.").

conspiracy. (CR Doc. 2349 at 182-91). The jury only had to unanimously find two types of racketeering activity that Petitioner agreed would be committed, and the evidence that the Government presented in this regard was overwhelming. Therefore, even if the second-degree murder instruction was erroneous or confusing, there is no reasonable probability that the outcome of trial would have been different. See United States v. Borromeo, 954 F.2d 245, 248 (4th Cir. 1992) (on direct appeal, finding that, even if the RICO conspiracy jury instruction regarding the enterprise's nexus with interstate commerce was narrowly construed as erroneous, it was harmless in light of the evidence); United States v. Ali, 991 F.3d 561, 575 (4th Cir.), *cert. denied*, 142 S.Ct. 486 (2021) (on plain error review, finding that the defendant could not establish that the outcome of trial would have been different absent an improper jury instruction on the § 924(c) "crime of violence" element in light of the overwhelming weight of the evidence the government presented at trial); United States v. Myers, 280 F.3d 407 (4th Cir. 2002) (failure to instruct the jury that it had to unanimously agree on the four drug transactions supported a § 924(c) offense did not constitute plain error because defendant failed to show that the failure to give the instruction resulted in his conviction in light of the overwhelming evidence).[6] Accordingly, counsel cannot be deemed ineffective for failing to object.

**(c)** Petitioner contends that counsel should have objected when the Court failed to instruct the jury on the "interdependence" element of drug conspiracy pursuant to §§ 841 and 846. Petitioner argues that the omitted instruction prejudiced him because there was no evidence to indicate overall agreement between Petitioner and the alleged co-conspirators to perform drug

---

[6] These cases are cited because they are instructive; the Court does not mean to suggest that the plain error and ineffective assistance of counsel standards are interchangeable. See Rangel, 781 F.3d at 745–46 (noting the similarities between plain error and ineffective assistance of counsel inquiries); United States v. Carthorne, 878 F.3d 458, 465–66 (4th Cir. 2017) (recognizing that the prejudice showings for plain error and ineffective assistance of counsel are not identical).

dealing as part of UBN's success, and no evidence suggested that the activity was necessary to sustaining the charged conspiracy, *i.e.*, that UBN could have moved forward without dependence on drug activity and vice versa. (Doc. No. 1-1 at 8-10).

To prove conspiracy to possess with intent to distribute a controlled substance, the Government must establish that: (1) an agreement to possess with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See <u>United States v. Burgos</u>, 94 F.3d 849, 857 (4th Cir. 1996) (*en banc*) (citing <u>United States v. Collazo</u>, 732 F.2d 1200, 1205 (4th Cir. 1984)).

The Court instructed the jury that the offense of conspiracy to possess with intent to distribute a controlled substance in violation of § 846 requires the Government to prove beyond a reasonable doubt:

> First, that two or more persons willfully formed an unlawful agreement that was in existence at the time alleged in the indictment; second, that some point during the existence or life of the conspiracy the individual knowingly and willfully joined the conspiracy; and third, that the object or purpose of the conspiracy was to violate the Controlled Substances Act by way of distributing and possessing with the intent to distribute a controlled substance; and fourth, the individual knew that the substance involved in the conspiracy was a controlled substance….

(CR Doc. No. 2349 at 190-91).

The foregoing instruction adequately conveyed all the elements of conspiracy to possess with intent to distribute controlled substances in violation of §§ 841 and 846. See <u>Burgos</u>, 94 F.3d at 857. The Petitioner's argument that the Court was required to include "interdependence" as a separate element is rejected. The Fourth Circuit has issued opinions articulating conspiracy with and without a separate interdependence element. <u>Compare</u> <u>Id.</u> (omitting a separate "interdependence" element); <u>with</u> <u>United States v. Stewart</u>, 256 F.3d 231, 250 (4th Cir. 2001)

12

(identifying the elements of drug conspiracy as: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators"). "Interdependence is established when the activities of the alleged co-conspirators in one aspect of the charged scheme are necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or to the success of the venture as a whole." Stewart, 256 F.3d at 250. Petitioner has failed to explain why it was erroneous for the Court to adhere more closely to the elements as articulated by Burgos rather than Stewart. Further, Petitioner could not have been prejudiced because interdependence was implied from the charge as a whole. (CR Doc. No. 2349 at 168, 170-71) (defining "conspiracy" as a "combination or agreement … to join together to attempt to accomplish some unlawful purpose;" describing conspiracy as "a kind of 'partnership'"); see Mascioli v. United States, 2009 WL 1328105 (N.D. W. Va. May 12, 2009) (conspiracy instruction omitting interdependence as a separate element was not erroneous because the Fourth Circuit has clearly upheld instructions with and without interdependence as a separate element, and the concept of interdependence was implied in every element of the court's charge). The Court's instruction implicitly conveyed the concept of interdependence and the instructions that were provided correctly and fully stated the law.

The Petitioner's arguments that the Court should have further instructed the jury that it must find that Petitioner participated in a drug trafficking conspiracy, and that Petitioner must have had an agreement with the co-conspirators to engage in drug dealing as part of UBN, are meritless. The Petitioner was charged only with RICO conspiracy. Conspiracy to possess with intent to distribute a controlled substance served as a predicate act for the RICO conspiracy and not as a separate charge. As such, the Government was not required to prove that Petitioner participated in

a drug trafficking conspiracy or that he conspired to do so. See Salinas, 522 U.S. at 63 (a RICO conspiracy may "exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."); United States v. Cornell, 780 F.3d 616, 624 (4th Cir. 2015) ("to secure a conviction for RICO conspiracy, the government is not required to allege or prove the actual completion of a single racketeering act by the defendant or any other member of the conspiracy"). Further, the Petitioner's suggestion that the drug trafficking conspiracy could only be a RICO conspiracy predicate if drug dealing was necessary to UBN's success, misstates the elements of RICO conspiracy. The jury was correctly instructed regarding the elements of RICO conspiracy, including enterprise, nexus, and pattern of racketeering activity. See Section (a), *supra*; Section (d), *infra*; (CR Doc. No. 2349 at 167-82). Accordingly, counsel did not perform deficiently by failing to object, and Petitioner cannot demonstrate prejudice.

**(d)** Next, Petitioner argues that counsel should have objected when the Court failed to provide adequate instruction on the operation, management, and participation conduct requirement of the charged offense, and for failing to require the Court to make a specific finding on that conduct requirement.

While liability for a substantive RICO offense under § 1962(c) requires an individual to have participated in the operation or management of an enterprise, Reves v. Ernst & Young, 507 U.S. 170 (1993), RICO conspiracy under § 1962(d) contains no such requirement, United States v. Mouzone, 687 F.3d 207, 217-18 (4th Cir. 2012) ("§ 1962(d) liability does not require that a defendant have a role in directing an enterprise").

The Court correctly instructed the jury on the elements of RICO conspiracy. See Section (a), *supra.* The Court then further instructed the jury as follows:

> Each defendant must have agreed that a conspirator would conduct or
> participate in the conduct of the affairs of the enterprise. A defendant may be

convicted of a RICO conspiracy offense even if he or she did not personally participate in the operation or management of the enterprise when the evidence establishes that the defendant knowingly agreed to facilitate a scheme which, if completed, would constitute a RICO substantive violation involving **at least one conspirator who would participate in the operation or management of the enterprise**. **Such proof of operation and management may include evidence that the defendant agreed that a conspirator would intentionally perform acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise, or that a conspirator had some part in directing the enterprise's affairs**. Rather, an enterprise is operating not just by upper management, but also by lower-rung participants in the enterprise, who are in the direction of upper management or carry out upper management's orders. An enterprise also might be operated or managed by one who exerts control over the enterprise.

(CR Doc. No. 2349 at 178-79) (emphasis added).

Petitioner argues that the foregoing "helpful[ness]" language was insufficient because the Court did not require a specific finding on the operation or management of the enterprise; and did not inform the jury that the simple acts of giving directives and performing tasks necessary or helpful to UBN were insufficient. (Doc. No. 1 at 13). The jury was not required to make a specific finding on this point. He argues that the foregoing prejudiced him because the jury was not fully informed of the governing law, the erroneous instruction could have reasonably affected the verdict, and the evidence of conspiracy was not so overwhelming as to deem the error harmless. (Doc. No. 1-1 at 10-12)

The Court's instruction correctly conveyed the law; therefore, counsel was not ineffective for failing to object, and Petitioner has failed to demonstrate prejudice.

**(e)** Finally, Petitioner argues that counsel should have objected to the instruction misstating the RICO elements distinction between an enterprise and a pattern of racketeering activity.

The existence of an "enterprise" is distinct from a "pattern of racketeering activity," the first being a group of persons associated together for a common purpose of engaging in a course of conduct, and the latter being a series of criminal acts as defined by statute. United States v.

_Turkette_, 452 U.S. 576, 583 (1981). The proof of one does not necessarily establish proof of the other. _Boyle v. United States_, 556 U.S. 938, 947 (2009). However, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" _Id._ (quoting _Turkette_, 452 U.S. at 583).

The Court correctly instructed the jury that the Government must prove "that an enterprise existed," and defined an "enterprise" as including "any individual, partnership, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" and it also defined an "association-in-fact enterprise." (CR Doc. No. 2349 at 171-72). It further instructed that, "[a]lthough the existence of an enterprise is a distinct element that must be proven by the Government, … [c]ommon sense dictates that the existence of an association-in-fact enterprise is oftentimes more readily proven by what it does rather than by an abstract analysis of its structure. Therefore, you may consider proof of racketeering acts to determine whether the evidence establishes the existence of the charged enterprise, and, further, you may infer the existence of the enterprise from evidence of the pattern of racketeering activity." (_Id._ at 173). The Court instructed that "[t]he Government must prove beyond a reasonable doubt that the defendant agreed that a conspirator would engage in a pattern of racketeering activity" and set forth the elements for establishing a pattern of racketeering activity. (_Id._ at 179).

The foregoing clearly informed the jury that an "enterprise" and "pattern of racketeering activity" are distinct, must both be proven beyond a reasonable doubt, and may be established by overlapping evidence. These instructions were correct and did relieve the Government of its burden of proof. Accordingly, counsel was not ineffective for failing to object and Petitioner is unable to establish prejudice.

**(B)**      <u>**Sentencing**</u>

Petitioner contends that counsel was ineffective with regards to sentencing by failing to: (a) adequately challenge the Government's evidence of drug quantity, or investigate and present exculpatory or mitigating evidence on that point; and (b) adequately challenge the obstruction of justice enhancement.

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." <u>Glover v. United States</u>, 531 U.S. 198, 203 (4th Cir. 2001).

**(a)** First, Petitioner argues with regards to drug amount that counsel failed to object to and impeach the Government's evidence as unreliable and inconsistent, or investigate and present exculpatory and mitigating evidence on Petitioner's behalf. He specifically argues that counsel should have interviewed co-Defendant Montraya Atkinson and called him to testify that he "never admitted to anyone in law enforcement that he sold drugs as part of UBN for any reason." (Doc. No. 1 at 13); <u>see</u> (Doc. No. 1-1 at 37). He further argues that counsel should have objected when the Court failed to make a "reliability factual determination" about the testimony of special agent Maria Joycs. (Doc. 1 at 13).

This claim is conclusively refuted by the record insofar as counsel did object to the drug quantity determination and the accuracy of the drug quantities that were reasonably foreseeable to Petitioner. (CR Doc. No. 1802). On direct appeal, the Fourth Circuit found that "the district court separately determined the applicable offenses as … drug trafficking in an amount totaling at least 1,600 kilograms resulting in a base offense level of 30" for Petitioner, and rejected the argument that this finding was erroneous because it lacked sufficient evidence to find Petitioner committed the underlying offenses. <u>Gutierrez</u>, 963 F.3d at 341. It found that "the Government presented ample evidence during the jury trial and the sentencing hearings that Appellants engaged in the attributed

underlying racketeering activities" including that Petitioner engaged in smuggling contraband in the prisons. Id. There is no reason for the Court to revisit the issue in the instant proceeding under the guise of ineffective assistance of counsel. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Petitioner's arguments that counsel should have further investigated and presented evidence regarding the matter are meritless. The evidence demonstrated that: Petitioner admitted to a cellmate in 2017 that, during the course of the conspiracy, he trafficked heroin and marijuana inside the New York State Department of Corrections; he stated in a recorded conversation in 2015 that he had 20 to 25 grams of heroin at the time and he was selling inside the New York Department of corrections and expressed interest in developing a heroin distribution enterprise in the southern United States; he engaged in conversations about promoting to the position of "high" in North Carolina co-Defendant Atkinson, who pleaded guilty to RICO conspiracy and sold approximately eight kilos of cocaine; and Petitioner stated in a recorded phone conversation that he knew his UBN subordinates, such as Atkinson, would traffic controlled substances to fund UBN. See (CR Doc. No. 2353 at 45-59); (CR Doc. No. 1941 at ¶¶ 24-26). Atkinson's statement purports to be "sworn," however, it is not signed by Atkinson under penalty of perjury, nor is it signed by an individual authorized to place Atkinson under oath. (Doc. 1-1 at 37). Moreover, the Petitioner's argument that counsel should have impeached the reliability of the Government's evidence, or called as a witness the co-Defendant whose drug dealing was attributed to Petitioner, fails because there is no reasonable probability that such would affected Petitioner's sentence in light of the foregoing, including his own recorded statements. (Doc. No. 1-1 at 37). The Court heard evidence that mirrored the information contained in Atkinson's statement, *i.e.*, that Petitioner was

incarcerated at the time the drug deals took place, and the drug dealing was Atkinson's livelihood rather than a UBN activity. (CR Doc. No. 2353 at 30-32). However, the Court nevertheless found that more than five kilos of drugs were reasonably foreseeable by the Petitioner. Had counsel presented cumulative evidence on those points, such would not have changed the Court's conclusion with regards to the drug amount, especially in light of the fact that the drug amount that the Government established at the sentencing hearing was a very conservative estimate. Nor would an objection that the Court make a "reliability factual determination" have been successful; the Court considered the PSR, evidence presented at trial and at the sentencing hearing, and the arguments of counsel. The Court considered all of the foregoing, including the evidence's reliability, and made a determination at sentencing by the preponderance of the evidence. No further findings were required and an objection by counsel on this point would not have changed the sentencing outcome whatsoever. Petitioner's argument that counsel should have pointed out inconsistent evidence from a prior hearing is also unavailing. The Court was well aware of the prior proceedings and all of the evidence presented in the case. The burden of proving the drug amount was on the Government by the preponderance of the evidence, which it easily accomplished. No further argument on this point would have changed the Court's determination regarding the drug amount that was known to or reasonably foreseeable by Petitioner.

**(b)** Second, Petitioner argues that counsel was ineffective with regards to the obstruction of justice enhancement by failing to object that the Court did not make a factual determination of "willfulness" element, and "to the government tendering [Petitioner's] alleged conduct as falling under § 1503 – a statutory framework wholly unrelated to the § 3C1.1 enhancement factors…." (Doc. No. 1 at 14).

Section 3C1.1 applies if: "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impeded, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense…." U.S.S.G. § 3C1.1 (2018). Obstructive conduct that occurs prior to the start of the investigation of the offense may be covered by this guideline "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, app. note 1. Examples of covered conduct include: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so…." U.S.S.G. § 3C1.1, app. note 4(A).

Counsel objected to the obstruction of justice enhancement, the Court overruled the objection, and the Fourth Circuit affirmed on direct appeal, finding that "the sentencing court did not commit any procedural error, such as, 'failing to properly calculate the applicable Sentencing Guidelines range…." Gutierrez, 963 F.3d at 343 (internal quotations omitted). The Fourth Circuit further noted that "[t]he district court considered each Appellant's criminal and personal history, criminal conduct, objections to certain sentencing enhancements, and the evidence presented during the trial and the sentencing hearings. After careful consideration, it overruled most objections to the enhancements, articulated its findings as to Appellants' relevant criminal conduct and supporting reasons, and determined a sentence for each Appellant." Id. There is no reason for the Court to revisit the Fourth Circuit's conclusions in the instant proceeding. See Boeckenhaupt, 537 F.2d at 1183.

Further, the Petitioner's present challenges to the obstruction enhancement are meritless. The Petitioner argues that counsel should have objected that the Court did not make a finding about

the willfulness of Petitioner's obstruction. Counsel argued, *inter alia*, that the Petitioner did not intent to threaten anyone and that his allegedly obstructive actions could have been interpreted innocently but instead were misconstrued as something negative. (CR Doc. No. 1802); (CR Doc. No. 2353 at 85-86). The Court considered the evidence and counsel's arguments, *i.e.*, that Petitioner did not threaten anyone and that his statements had been misinterpreted, and overruled the objection. (CR Doc. No. 2353 at 84-86). The Court found that there was "overwhelming evidence that UBN retaliates against cooperating people" and that the obstruction incidents attributable to Petitioner "should be considered in the context of all the trial evidence…," and construed the Petitioner's behavior consistently with the Probation Office's interpretation of those acts. (Id. at 87-88). Thus the Court did consider the willfulness of Petitioner's actions and sustained the PSR.

Petitioner's suggestion that the Government improperly held him to the standard of an obstruction of justice statute "wholly unrelated to the § 3C1.1 enhancement factors" is also unavailing. (Doc. No. 1 at 14). This argument is too vague to support relief insofar as the Petitioner fails to identify the portion of the record to which he refers. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). In any event, referring to an obstruction statute when considering the obstruction enhancement is not improper. The U.S. Sentencing Guidelines application notes specifically state that "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511)" are examples of the types of conduct to which the obstruction enhancement applies. U.S.S.G. § 1C1.1, App. Note 4(l) (2016). Petitioner has failed to identify any meritorious grounds

for challenging the obstruction of justice enhancement that reasonable counsel would have raised; counsel, accordingly, cannot be deemed ineffective.[7]

Petitioner has failed to identify any area in which counsel provided unreasonable assistance with regards to sentencing, or demonstrated that such had a reasonable probability of affecting his sentence. For all the foregoing reasons, the Petitioner's claims that counsel was ineffective with regards to sentencing are denied.

**(C)** **Recusal**

Petitioner argues that counsel should have sought the undersigned's recusal separately from Defendant Gilmore. He argues that recusal was warranted because the Court had previously recused himself from the Cureton case, and it was inconsistent for the Court to conclude that the instant case was sufficiently connected to the present case to warrant an anonymous jury based on the threats in the Cureton case but not sufficiently connected to warrant recusal. (Doc. No. 4 at 4-5). Petitioner asserts that he is "much differently situated" from Defendant Gilmore because he is "a godfather of the entire UBN organization," and thus was "liable for virtually any and every crime committed by any and every member of the UBN organization" such that the Court "was actually a material witness to a criminal act allegedly committed under the flag of the very enterprise that he had expressly stated constituted one seamless criminal conspiracy and which the current defendants were alleged to be members of" and was required to recuse himself pursuant to 28 U.S.C. § 455(b)(2).[8] (Doc. No. 4 at 5-6, 11). He argues that the undersigned should be required

---

[7] Even if Petitioner were successful on the obstruction of justice objection, this would not have affected his advisory guideline range because an offense level of 36 and criminal history category of VI is punishable by 324 to 405 months' imprisonment, which still exceeds the offense's 20-year statutory maximum. Nor would any change in the advisory guideline range have changed the Court's sentencing determination in consideration of all the sentencing factors and the circumstances of the case.

[8] Petitioner erroneously cites "18 U.S.C. § 455."

to remove himself, in perpetuity, "from those UBN cases in which one of the alleged Godfathers is a defendant." (Doc. No. 4 at 10).

A federal judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned" 28 U.S.C. § 455(a); "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" 28 U.S.C. § 455(b)(1); or "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it…" 28 U.S.C. § 455(b)(2). A judge who presides at a trial is not recusable just because he becomes "exceedingly ill disposed towards the defendant" upon completion of the evidence because the judge's "knowledge and the opinion it produced were properly and acquired in the course of the proceedings…." Liteky v. United States, 510 U.S. 540, 551 (1994). "Also not subject to deprecatory characterizations of 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." Id. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id.; Glenn v. Wells Fargo Bank, N.A., 710 F. App'x 574 (4th Cir. 2017). Further, § 455 carries an "extrajudicial source" limitation, under which bias or prejudice must, as a general matter, stem from "a source outside the judicial proceeding at hand" in order to disqualify a judge. Belue v. Leventhal, 640 F.3d 567, 572-73 (4th Cir. 2011) (quoting Liteky, 510 U.S. at 545, 551, 554). That is, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, **or of prior proceedings**, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555 (emphasis added).

23

The Fourth Circuit has already resolved this issue on direct appeal, finding that the Court did not err in denying recusal in the instant criminal case. <u>Gutierrez</u>, 963 F.3d at 331-32. That finding applied to "Appellants," *i.e.*, Petitioner, Gilmore, and Gutierrez; Petitioner's attempt to except himself from the Fourth Circuit's ruling is rejected. The more specific issues that Petitioner asserts that counsel should have raised at trial are also unavailing because they do not warrant recusal. The mere fact that Petitioner was a "godfather" of UBN is irrelevant to the question of recusal, and his attempt to substitute the conspiracy standard for the recusal standard is rejected. The fact that a photograph was found in Cureton's cell in a prior UBN case did not make the Court a "witness" in the instant separate criminal case, nor did it result in bias or extrajudicial knowledge of a disputed evidentiary fact in Petitioner's criminal case. <u>See</u> 28 U.S.C. § 455(b)(1)-(2); <u>see</u> <u>Liteky</u>, 510 U.S. at 555. Further, requiring the Court's recusal in perpetuity for any case involving a UBN "godfather" would result in the type of judge shopping that the courts seek to avoid. Petitioner's recusal claim was previously rejected by the Fourth Circuit, and no meritorious basis for recusal appears in the record. Accordingly, counsel was not ineffective for failing to seek recusal separately from co-Defendant Gilmore or to argue the specific grounds for recusal that Petitioner presently asserts. Accordingly, this claim will be denied.

**(2)     Claims of Ineffective Assistance of Appellate Counsel**

Petitioner contends that appellate counsel was ineffective for failing to raise the issues set forth in Section (1), *supra*, on direct appeal.

The right to the effective assistance of counsel extends to direct appeal. <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4ᵗʰ Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but

for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

This claim is rejected to the extent that appellate counsel presented the claims that the Petitioner has raised on direct appeal. The fact that they did not succeed fails to demonstrate that counsel was ineffective. To the extent that appellate counsel did not raise the claims on direct appeal, counsel cannot be deemed deficient for choosing not to raise them on direct appeal because they are meritless. See Section (1), *supra*. Even if counsel had raised them, there is no reasonable probability that they would have changed the outcome of the direct appeal had counsel raised them. Petitioner's claim of ineffective assistance of appellate counsel will therefore be denied.

**(3)    Motion to Recuse**

The Petitioner has filed a Motion to Recuse in this § 2255 proceeding, arguing that the Court must recuse itself pursuant to 28 U.S.C. §§ 455(a), (b)(1), and (b)(2)[9] because: Petitioner's criminal case was directly linked to the <u>Cureton</u> case in which the Court was a "victim/material witness and thus possessed personal knowledge of disputed facts concerning the proceedings … acquired from extrajudicial sources" (Doc. No. 8 at 6); and, on January 14, 2022, Petitioner filed a Complaint of Judicial Misconduct in the Fourth Circuit Court of Appeals against the Court for refusing to recuse itself in the criminal case (Doc. No. 8-2). The Government has moved to dismiss the Motion to Recuse and Petitioner has filed a Response. (Doc. Nos. 10, 11).

"Timeliness is an essential element of a recusal motion…" under § 455(a) and (b). <u>Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.</u>, 748 F.3d 160, 167 (4th Cir. 2014). To be timely, a recusal motion must be made at the first opportunity after discovery of the facts tending to prove disqualification." <u>United States v. Taggart</u>, 983 F.2d 1059 (4th Cir. 1993) (quoting <u>Sine v. Local No. 992 Int'l Brotherhood of Teamsters</u>, 882 F.2d 913, 915-16 (4th Cir. 1989) (addressing 28 U.S.C. § 144). This timeliness requirement serves to deter "not only delay, but also 'wait and see' tactics." <u>Id.</u>

Petitioner's present Motion to Recuse raises the same issues that co-Defendant Gilmore raised during the criminal case in May 2018. (CR Doc. No. 1499). Petitioner filed the instant § 2255 Motion to Vacate on August 4, 2021,[10] and it was docketed and assigned to the undersigned on August 12, 2021. (Doc. No. 1). He did not file his Motion to Recuse in the instant case until

---

[9] A separate recusal statute, 28 U.S.C. § 144, provides parties with one opportunity per case to file an affidavit that the presiding judge has a personal bias or prejudice regarding a party.  If the affidavit is sufficient, accompanied by a certificate of good faith, and timely filed, another judge will be assigned to the proceeding.  The Petitioner does not seek recusal on this ground.

[10] <u>Houston</u>, 487 U.S. at 276.

January 18, 2022 at the earliest -- more than five-and-a-half months after he initiated this action, and more than two months after the Government filed its Response. (Doc. Nos. 5, 8-1). The record clearly indicates that Petitioner failed to request recusal at the first opportunity. His laches argument is rejected. Accordingly, the Motion to Recuse will be denied as time-barred. See Taggart, 983 F.2d at 1059 (finding a motion to recuse to be untimely where it was not made until more than two years after the statements that allegedly suggested bias, and after a motion for sentence reduction was denied); United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) (§ 144 motion to recuse that was based on comments at the time of his plea, and was not filed until after sentencing, was "[m]anifestly too late"); United States v. Whorley, 550 F.3d 326 (4th Cir. 2008) (affirming denial of recusal motion filed seven months after the grounds for recusal were disclosed at arraignment, and on the last business day before trial).

Even if the Motion to Recuse were timely filed, it would be denied on the merits. Petitioner has failed to establish that the Court's recusal from the criminal case was required for the same reasons discussed in Section 1(C), *supra*. Nor will the Petitioner be allowed to force the Court to recuse itself from the instant § 2255 action by filing a judicial conduct complaint in the Fourth Circuit. See Owens, 902 F.2d at 1156 ("courts have typically rejected recusal motions based on, and effectively created by, a litigant's deliberate act of criticizing the judge or judicial system."); see, e.g., Woltz v. United States, 2010 WL 330218 (W.D.N.C. Jan. 20, 2010) (a litigant's filing of a complaint of judicial misconduct against a presiding judge does not infer bias or impartiality; such would result in judge-shopping). Accordingly, the Government's Motion to Dismiss will be granted and Petitioner's Motion to Recuse will be dismissed and denied.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Vacate is denied, the Respondent's Motion to Dismiss Petitioner's Motion to Recuse is granted, and Petitioner's Motion to Recuse is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1.    The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED with prejudice and DENIED**.

2.    Respondent's Motion to Dismiss Petitioner's Motion to Recuse, (Doc. No. 10), is **GRANTED**.

3.    Petitioner's Motion to Recuse, (Doc. No. 8), is **DISMISSED and DENIED**.

4.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

5.    The Clerk is instructed to close this case.

Signed: February 16, 2022

Frank D. Whitney
United States District Judge